# EXHIBIT A

1   KELLEY S. OLAH (SBN 245180)
    *KOlah@btlaw.com*
2   **BARNES & THORNBURG LLP**
    2029 Century Park East, Suite 300
3   Los Angeles, California 90067
    Telephone: (310) 284-3880
4
    ANDREW J. GALVIN (SBN 261925)
5   *andrew.galvin@btlaw.com*
    **BARNES & THORNBURG LLP**
6   655 W Broadway, Suite 1300
    San Diego, CA 92101
7   Telephone: (619) 321-5000

8   JESSICA DAVIDSON (admitted *Pro Hac Vice*)
    *Jessica.Davidson@skadden.com*
9   ALLISON M. BROWN (admitted *Pro Hac Vice*)
    *Allison.brown@skadden.com*
10  **SKADDEN ARPS SLATE MEAGHER &
    FLOM LLP**
11  One Manhattan West
    New York, NY 10001
12  Telephone: (212)-735-2588

13  Attorneys for Defendants
    DePuy Orthopaedics, Inc., DePuy Products, Inc.,
14  DePuy Synthes, Inc., Johnson & Johnson,
    Johnson & Johnson Services, Inc., and Johnson
15  & Johnson International

16              **UNITED STATES DISTRICT COURT**

17            **SOUTHERN DISTRICT OF CALIFORNIA**

18
    BARBARA MCCOY,                    Case No. 3:22-CV-02075 JLS (SBC)
19
                Plaintiff,            **DEFENDANTS' NOTICE OF
20                                    MOTION AND MOTION TO
        vs.                          EXCLUDE CERTAIN OPINIONS OF
21                                   MARI TRUMAN; MEMORANDUM
    DEPUY ORTHOPAEDICS, INC.;        OF POINTS AND AUTHORITIES IN
22  DEPUY PRODUCTS, INC.;            SUPPORT THEREOF**
    DEPUY SYNTHES, INC.;
23  JOHNSON & JOHNSON;               Date:      March 21, 2024
    JOHNSON & JOHNSON                Time:      1:30 p.m.
24  SERVICES, INC.; and              Judge:     Hon. Janis L. Sammartino
    JOHNSON & JOHNSON                Courtroom: 4D
25  INTERNATIONAL,

26              Defendants.

27

28
                                                        3:22-CV-02075 JLS (SBC)

BARNES &
THORNBURG LLP
ATTORNEYS AT LAW
LOS ANGELES

**DEFENDANTS' NOTICE OF MOTION AND MOTION TO EXCLUDE CERTAIN OPINIONS OF MARI TRUMAN;
MEMORANDUM AND POINTS OF AUTHORITIES IN SUPPORT THEREOF**

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on March 21, 2024, at 1:30 p.m., or as soon thereafter as this matter can be heard, before the Honorable Janis L. Sammartino, in Courtroom 4D of the United States District Court for the Southern District of California, located at 221 West Broadway, San Diego, California 92101, Defendants DePuy Orthopaedics, Inc., DePuy Products, Inc., DePuy Synthes, Inc., Johnson & Johnson, Johnson & Johnson Services, Inc., and Johnson & Johnson International ("Defendants") will and hereby do move the Court for an Order granting Defendants' Motion to Exclude Certain Opinions of Mari Truman ("Motion").

This Motion is made pursuant to Federal Rule of Evidence 702 on the grounds that Ms. Truman seeks to offer certain opinions that exceed the scope of her qualifications, lack a reliable basis and/or are irrelevant as follows:

1.  Ms. Truman's defect, warning and marketing opinions inappropriately parrot the excluded opinions of Dr. Li;

2.  Ms. Truman is not qualified to testify about medical causation and her causation opinions lack a reliable foundation;

3.  Ms. Truman's opinions regarding DePuy's warning and testing are speculative and lack sufficient factual bases;

4.  Ms. Truman is not qualified to render warning causation opinions, and her opinions on this subject are unreliable;

5.  Ms. Truman is not qualified to testify about DePuy's training;

6.  Ms. Truman's opinion that the Pinnacle device was defective is unreliable and irrelevant; and

7.  Ms. Truman's opinions about DePuy's state of mind and knowledge are not helpful to the jury.

This Motion is based on this Notice of Motion and Motion, the accompanying Memorandum, the pleadings, papers, and records filed in this action, and such further arguments and matters as may be offered at the time of the hearing of this Motion.

BARNES &
THORNBURG LLP
ATTORNEYS AT LAW
LOS ANGELES

2                                    3:22-CV-2075 JLS (SBC)
DEFENDANTS' NOTICE OF MOTION AND MOTION TO EXCLUDE CERTAIN OPINIONS OF MARI TRUMAN;
MEMORANDUM AND POINTS OF AUTHORITIES IN SUPPORT THEREOF

Dated:  December 15, 2023

Respectfully submitted,

**BARNES & THORNBURG LLP**

By: */s/ Kelley S. Olah*
       Kelley S. Olah
       Andrew J. Galvin

**SKADDEN ARPS SLATE
MEAGHER & FROM LLP**

By: */s/ Jessica Davidson*
       Jessica Davidson
       Allison Brown

Attorneys for Defendants
DePuy Orthopaedics, Inc., DePuy
Products, Inc., DePuy Synthes,
Inc., Johnson & Johnson, Johnson
& Johnson Services, Inc., and
Johnson & Johnson International

BARNES &
THORNBURG LLP
ATTORNEYS AT LAW
LOS ANGELES

3

3:22-CV-2075 JLS (SBC)

**DEFENDANTS' NOTICE OF MOTION AND MOTION TO EXCLUDE CERTAIN OPINIONS OF MARI TRUMAN;
MEMORANDUM AND POINTS OF AUTHORITIES IN SUPPORT THEREOF**

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

BACKGROUND ...........................................................................................3

ARGUMENT ...............................................................................................4

I.   MS. TRUMAN'S DEFECT, WARNING AND MARKETING OPINIONS  INAPPROPRIATELY PARROT THE EXCLUDED OPINIONS OF DR. LI. ........................................................................4

II.  MS. TRUMAN'S OPINIONS REGARDING MEDICAL CAUSATION ARE INADMISSIBLE FOR MULTIPLE REASONS. ................................6

    A.   Ms. Truman Is Not Qualified To Testify About The Nature Or Medical Cause Of Plaintiff's Alleged Injuries. .....................6

    B.   Ms. Truman's Opinion That Plaintiff Experienced "Sufficient" Wear To Cause Metallosis Is Not Based On A Reliable Methodology. ...........................................................................7

III. MS. TRUMAN'S TESTING AND WARNING OPINIONS LACK SUFFICIENT FACTUAL BASES. .............................................................8

    A.   Ms. Truman's Opinion That DePuy Failed To Warn About A Known Risk Of Excessive Metal Wear Debris In 2006 Is Not Grounded In Any Methodology. ..............................................9

    B.   Ms. Truman Has No Basis For Her Opinion That DePuy Failed To Adequately Test The Pinnacle Hip Implant. ..........................10

IV.  MS. TRUMAN'S WARNING CAUSATION OPINIONS SHOULD BE EXCLUDED. ....................................................................................11

V.   MS. TRUMAN'S TRAINING OPINION SHOULD BE EXCLUDED. ......13

VI.  MS. TRUMAN'S OPINION THAT THE PINNACLE DEVICE WAS DEFECTIVE IS UNRELIABLE AND IRRELEVANT. ...........................14

VII. MS. TRUMAN'S OPINIONS REGARDING DEPUY'S STATE OF MIND SHOULD BE EXCLUDED. ......................................................15

CONCLUSION...........................................................................................16

3:22-CV-2075 JLS (SBC)

BARNES &
THORNBURG LLP
ATTORNEYS AT LAW
LOS ANGELES

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Aleo v. SLB Toys USA, Inc.,*
   995 N.E.2d 740 (Mass. 2013)..................................................................*1*

*Aya Healthcare Services, Inc. v. AMN Healthcare, Inc.,*
   613 F. Supp. 3d 1308 (S.D. Cal. 2020)..................................................15

*Bayes v. Biomet, Inc.,*
   No. 4:13-cv-00800-SRC, 2020 WL 5594059 (E.D. Mo. Sept. 18,
   2020)....................................................................................................1, 6

*In re ConAgra Foods, Inc.,*
   302 F.R.D. 537 (C.D. Cal. 2014) ..............................................................5

*Contreras v. Brown,*
   No. CV-17-08217-PHX-JAT, 2018 WL 7254917
   (D. Ariz. Dec. 4, 2018)...............................................................................6

*Daubert v. Merrell Dow Pharmaceuticals, Inc.,*
   509 U.S. 579 (1993) ....................................................................................4

*In re Diet Drugs,*
   *MDL No. 1203, 2001 WL 454586 (E.D. Pa. Feb. 1, 2001) .................11*

*Diviero v. Uniroyal Goodrich Tire Co.,*
   114 F.3d 851 (9th Cir. 1997)......................................................................9

*In re Ethicon, Inc., Pelvic Repair System Products Liability Litigation,*
   No. 2:12-cv-4301, 2014 WL 186872 (S.D. W. Va. Jan. 15, 2014) .....10

*Ferguson v. Valero Energy Corp.,*
   No. 06-540, 2009 WL 3335879 (E.D. Pa. Apr. 15, 2009)...................1, 6

*General Electric Co. v. Joiner,*
   522 U.S. 136 (1997) ...............................................................................9, 14

*Georges v. Novartis Pharmaceuticals Corp.,*
   No. CV 06-5207 SJO (VBKx), 2012 WL 9064768
   (C.D. Cal. Nov. 2, 2012) ..........................................................................12

*Hardison v. Biomet, Inc.,*
   No. 5:19-cv-00069-TES, 2020 WL 4334108 (M.D. Ga. July 27,
   2020)....................................................................................................1, 6

*Heinrich v. Ethicon, Inc.,*
   No. 2:20-cv-00166-APG-VCF, 2021 WL 2285435
   (D. Nev. June 4, 2021) ..............................................................................13

BARNES &
THORNBURG LLP
ATTORNEYS AT LAW
LOS ANGELES

*Hix v. Zimmer Biomet Holdings, Inc.*,
   No. 3:18-cv-00437-RCJ-WGC, 2022 WL 910256
   (D. Nev. Mar. 29, 2022) ...................................................................2

*Ho v. Michelin North America, Inc.*,
   520 F. App'x 658 (10th Cir. 2013).................................................14

*In re Imperial Credit Industries, Inc. Securities Litigation*,
   252 F. Supp. 2d 1005 (C.D. Cal. 2003)............................................5

*J.V. v. Pomona Unified School District*,
   No. LA CV15-07895 JAK (MRWx), 2017 WL 11636026
   (C.D. Cal. May 2, 2017) ...................................................................5

*Jinro America Inc. v. Secure Investments, Inc.*,
   266 F.3d 993 (9th Cir. 2001)............................................................4

*King v. Synthes (U.S.A.)*,
   532 F. Supp. 2d 828 (S.D. Miss. 2006)..........................................12

*Mason v. Ethicon, Inc.*,
   No. 6:20-cv-1078-RBD-DCI, 2021 WL 2580165
   (M.D. Fla. June 9, 2021) ................................................................13

*McClain v. Metabolife International, Inc.*,
   401 F.3d 1233 (11th Cir. 2005)........................................................8

*McCoy v. DePuy Orthopaedics, Inc.*,
   No. 22-CV-2075 JLS (SBC), 2023 WL 4551081
   (S.D. Cal. July 14, 2023) .................................................................3

*McCoy v. DePuy Orthopaedics, Inc.*,
   No. 22-CV-2075 JLS (SBC), 2023 WL 7389011
   (S.D. Cal. Nov 8, 2023) ...................................................................3

*Morris v. Biomet, Inc.*,
   491 F. Supp. 3d 87 (D. Md. 2020) .................................................10

*Mortensen v. Snavely*,
   145 F. App'x 218 (9th Cir. 2005).....................................................5

*Pelican International, Inc. v. Hobie Cat Co.*,
   No. 3:20-cv-02390-RSH-MSB, 2023 WL 2130379
   (S.D. Cal. Feb. 10, 2023).................................................................15

*In re Rezulin Products Liability Litigation*,
   309 F. Supp. 2d 531 (S.D.N.Y. 2004)............................................12

DEFENDANTS' NOTICE OF MOTION AND MOTION TO EXCLUDE CERTAIN OPINIONS OF MARI TRUMAN;
MEMORANDUM AND POINTS OF AUTHORITIES IN SUPPORT THEREOF

*Siring v. Oregon State Board of Higher Education ex rel. Eastern Oregon University*,
   927 F. Supp. 2d 1069 (D. Or. 2013).......................................................15

*Smith v. BNSF Railway Co.*,
   No. CIV-08-1203-D, 2011 WL 7053631 (W.D. Okla. Sept. 14, 2011).................................................................................................6

*Soto v. Trinity Morris Corp.*,
   880 N.Y.S.2d 876, 2004 WL 5663631 (Sup. Ct. 2004)................1, 3, 6

*Thompson v. Zimmer Inc.*,
   No. 11-CV-3099 (PJS/AJB), 2013 WL 5406628
   (D. Minn. Sept. 25, 2013).......................................................1, 9, 14, 15

*Tillman v. C.R. Bard, Inc.*,
   96 F. Supp. 3d 1307 (M.D. Fla. 2015) .....................................12, 14, 16

*Wilson v. Hewlett-Packard Co.*,
   668 F.3d 1136 (9th Cir. 2012)..............................................................10

*Worley v. State Farm Mutual Automobile Insurance Co.*,
   No. 3:12-cv-1041-J-MCR, 2013 WL 6478109
   (M.D. Fla. Dec. 10, 2013) ......................................................................6

*In re Zantac (Ranitidine) Products Liability Litigation*,
   644 F. Supp. 3d 1075 (S.D. Fla. 2022) ..................................................8

*In re Zimmer M/L Taper Hip Prosthesis or M/L Taper Hip Prosthesis with Kinectiv Technology & VerSys Femoral Head Products Liability Litigation*,
   MDL No. 2859, 2021 WL 3475681 (S.D.N.Y. Aug. 6, 2021) .....passim

**RULE**

Fed. R. Evid. 702 ........................................................................................4

**DEFENDANTS' NOTICE OF MOTION AND MOTION TO EXCLUDE CERTAIN OPINIONS OF MARI TRUMAN;
MEMORANDUM AND POINTS OF AUTHORITIES IN SUPPORT THEREOF**

Mari Truman, a biomechanical engineer, seeks to testify at trial about: (1) the testing and design of the Pinnacle metal-on-metal hip implant that allegedly injured Barbara McCoy and the warnings and marketing that accompanied that product; and (2) the cause of her injuries.[1]   As other courts have recognized in repeatedly excluding or limiting her testimony, Ms. Truman should not be allowed to testify on these topics; rather, she should be limited to topics on which she has actual expertise and opinions that are based on a reliable methodology.  *See, e.g.*, Trial Tr. 104:17-109:9, *Ness v. DePuy Orthopaedics, Inc.*, No. 24-C-14-002465 (Md. Cir. Ct. July 16, 2015) (Ex. 2) (granting, in part, defendants' motion in limine to limit Ms. Truman's expert testimony and excluding, *inter alia*, her opinion that DePuy provided inadequate warnings in a Pinnacle case).[2]   This Court should follow their lead and

---

[1]   Ms. Truman also offers opinions regarding the general mechanics of the hip joint and hip implants.  (*See, e.g.*, General Report of Mari Truman, MS, PE ("Truman Gen. Rep.") at 54-55, Aug. 28, 2023 (Ex. 1).)  Defendants do not challenge these opinions under Rule 702 and *Daubert* and will instead address the flaws in her testimony on these topics in cross-examination.

[2]   *See also, e.g.*, *Soto v. Trinity Morris Corp.*, 880 N.Y.S.2d 876, 2004 WL 5663631, at *3 (Sup. Ct. 2004) (Ms. Truman not qualified to opine on causation), *aff'd*, 810 N.Y.S.2d 331 (App. Div. 2006); *Ferguson v. Valero Energy Corp.*, No. 06-540, 2009 WL 3335879, at *1 (E.D. Pa. Apr. 15, 2009) (Ms. Truman was "not qualified" to testify regarding oxygen or autopsy findings); *Bayes v. Biomet, Inc.*, No. 4:13-cv-00800-SRC, 2020 WL 5594059, at *6 (E.D. Mo. Sept. 18, 2020) ("[Ms.] Truman is an engineer, not a medical doctor" and thus, "the [c]ourt will not permit [Ms.] Truman to opine on the medical causation of [plaintiff]'s injuries."); *Hardison v. Biomet, Inc.*, No. 5:19-cv-00069-TES, 2020 WL 4334108, at *12 (M.D. Ga. July 27, 2020) ("Ms. Truman does not have the requisite medical background, and the [c]ourt excludes all of her medical causation opinions on that basis. . . . To the extent Ms. Truman reiterates medical professionals' opinions in her report, medical experts would more appropriately establish those opinions."); *Aleo v. SLB Toys USA, Inc.*, 995 N.E.2d 740, 749-50 (Mass. 2013) (Ms. Truman's opinions were not based upon "sufficient facts or data" because the conditions on which they rested "were substantial[ly] differen[t]" from "the conditions of the accident" at issue) (citation omitted); *Thompson v. Zimmer Inc.*, No. 11-CV-3099 (PJS/AJB), 2013 WL 5406628, at *7 (D. Minn. Sept. 25, 2013) ("Because [Ms.] Truman cannot determine when or

BARNES &
THORNBURG LLP
ATTORNEYS AT LAW
LOS ANGELES

**DEFENDANTS' NOTICE OF MOTION AND MOTION TO EXCLUDE CERTAIN OPINIONS OF MARI TRUMAN**

exclude the bulk of her opinions.

As a threshold matter, the Court should exclude the bulk of Ms. Truman's testing, design and warning opinions because they simply parrot the recently excluded testimony of Dr. Stephen Li.

But copying from plaintiff's recently disqualified expert is not Ms. Truman's only problem. Her opinions fail for other reasons as well.

First, Ms. Truman is not a medical doctor and is therefore unqualified to testify as to the nature or medical cause of plaintiff's injuries. Second, Ms. Truman does not employ a reliable methodology to conclude that Ms. McCoy experienced wear sufficient to cause metallosis. Third, Ms. Truman's failure-to-warn opinions are similarly not grounded in proper methodology; nor does she have any basis to conclude that defendants failed to adequately warn or that these alleged failures caused Ms. McCoy's injuries; rather, these opinions amount to conclusory bottom-line assertions that fall short of the requirements of Rule 702 and *Daubert*. Fourth, Ms. Truman's training and defective design opinions are unreliable because they are not based on any data and are in fact contrary to the available evidence. Finally, Ms. Truman's opinions on defendants' state of mind are improper because, in a word, she

---

where the damage first occurred to the liner, her opinion that the liner contributed to Thompson's dislocations is not based on sufficient facts or data to be admissible."); *In re Zimmer M/L Taper Hip Prosthesis or M/L Taper Hip Prosthesis with Kinectiv Tech. & VerSys Femoral Head Prods. Liab. Litig.*, MDL No. 2859, 2021 WL 3475681, at *2, *7 (S.D.N.Y. Aug. 6, 2021) (excluding Ms. Truman's design defect "opinions [as] unreliable and unhelpful" because "there [wa]s too large a gap between the data she relies upon and the conclusions she reaches"), *reconsideration denied*, MDL No. 2859, 2021 WL 4251906 (S.D.N.Y. Sept. 17, 2021), *appeal withdrawn*; *Hix v. Zimmer Biomet Holdings, Inc.*, No. 3:18-cv-00437-RCJ-WGC, 2022 WL 910256, at *7 (D. Nev. Mar. 29, 2022) (finding that "[Ms.] Truman is not qualified to opine on medical causation," and precluding her from "offering medical causation opinions that simply recite or parrot the medical causation opinions of other experts"). The Pinnacle MDL proceeding disbanded before that court ruled on any motions to exclude or limit Ms. Truman's testimony.

is not a soothsayer.

## BACKGROUND

This Court previously disqualified engineering expert Dr. Stephen Li from testifying as an expert witness in this case. *McCoy v. DePuy Orthopaedics, Inc.*, No. 22-CV-2075 JLS (SBC), 2023 WL 4551081 (S.D. Cal. July 14, 2023) (Sammartino, J.). Following that ruling, this Court also denied plaintiff's motion to reopen fact discovery for the purpose of disclosing Dr. Li as a fact witness, *McCoy v. DePuy Orthopaedics, Inc.*, No. 22-CV-2075 JLS (SBC), 2023 WL 7389011 (S.D. Cal. Nov 8, 2023) (Sammartino, J.), noting that "the Court simply does not see how Dr. Li could testify in this case in any capacity other than that of an expert," *id.* at *3.

After the Court disqualified Dr. Li from testifying as an expert witness, plaintiff designated Ms. Truman—another biomechanical engineer—to replace him. Ms. Truman's general report "adopted" Dr. Li's opinions with only "minor changes" (Truman Gen. Rep. at 21), and heavily copied Dr. Li's expert opinions (*see* Dep. of Mari Truman ("Truman Dep.") 126:11-129:6, 130:6-132:2, Oct. 24, 2023 (Ex. 3)).

As noted above, Ms. Truman's opinions have often been criticized and excluded by courts, largely for her practice of opining on matters far outside her expertise, *e.g.*, *Soto*, 2004 WL 5663631, at *3 ("Plaintiff's biomechanical expert, Ms. Truman, is not a physician and is not competent to offer an opinion as to causal relationship . . . ."), and for "proffer[ing] design defect opinions [that] are unreliable and unhelpful," *In re Zimmer*, 2021 WL 3475681, at *2.

Ms. Truman seeks to testify that the Pinnacle hip components implanted in Ms. McCoy were "defective in design and presented an unreasonable risk of harm to [plaintiff] when compared to [its] utility." (*See* Case-Specific Report of Mari Truman, MS, PE ("Truman Rep.") at 19, Sept. 8, 2023 (Ex. 4); Truman Gen. Rep. at 16.) Ms. Truman also claims that the Pinnacle hip implant is "unreasonably dangerous and presented an unreasonable risk to implant recipients due to specific warning defects." (Truman Rep. at 20; *see also id.* at 17 (Ms. Truman opining that "DePuy used

1  misleading marketing materials to sell its Pinnacle metal-on-metal implant").) Lastly,
2  Ms. Truman asserts that Ms. McCoy "suffered" various alleged injuries, including
3  "pain and function loss," which Ms. Truman attributes to "the adverse tissue reactions
4  (metal sensitivity) to the wear debris and metal ions" from her Pinnacle MoM implant.
5  (*Id.* at 20; *see also id.* at 14 ("Due to the failure of the Pinnacle MoM Bearings
6  implanted in Barbara McCoy's left hip adverse local tissue reactions damaged [her]
7  right hip the tissues resulting in a large fluid collection.").)

8  ## ARGUMENT

9       Under recently amended Fed. R. Evid. 702, plaintiff has the burden of
10  "demonstrat[ing] to the court that it is more likely than not" that her expert's opinions
11  are "based on sufficient facts or data"; are the "product of reliable principles and
12  methods"; and reflect a "reliable application of the principles and methods to the facts
13  of the case." Fed. R. Evid. 702. A district court has a "special obligation" (i.e., a
14  "gatekeeping role") to ensure compliance with this requirement because expert
15  testimony can be "both powerful and quite misleading." *Daubert v. Merrell Dow*
16  *Pharms., Inc.*, 509 U.S. 579, 595, 597 (1993) (citation omitted); *see also Jinro Am.*
17  *Inc. v. Secure Invs., Inc.*, 266 F.3d 993, 1004 (9th Cir. 2001) ("care must be taken to
18  assure that a proffered witness truly qualifies as an expert" because an expert's
19  "statements . . . carry special weight with the jury"), *opinion amended on denial of*
20  *reh'g*, 272 F.3d 1289 (9th Cir. 2001). Ms. Truman's proposed testimony regarding
21  causation, testing, defect, marketing and warnings fails to satisfy Rule 702's
22  standards for multiple reasons.

23  ## I.   MS. TRUMAN'S DEFECT, WARNING AND MARKETING OPINIONS INAPPROPRIATELY PARROT THE EXCLUDED OPINIONS OF DR. LI.
24

25       As a threshold matter, the Court should exclude the significant swaths of Ms.
26  Truman's report that inappropriately parrot the recently excluded defect, warning and
27  marketing opinions of Dr. Li. As courts have made clear, "[a]n expert may not
28  present testimony that merely 'parrots' the opinion of others, without providing an

BARNES &
THORNBURG LLP
ATTORNEYS AT LAW
LOS ANGELES

4                                                    3:22-CV-2075 JLS (SBC)
DEFENDANTS' NOTICE OF MOTION AND MOTION TO EXCLUDE CERTAIN OPINIONS OF MARI TRUMAN;
MEMORANDUM AND POINTS OF AUTHORITIES IN SUPPORT THEREOF

independent evaluation of the evidence." *J.V. v. Pomona Unified Sch. Dist.*, No. LA CV15-07895 JAK (MRWx), 2017 WL 11636026, at *22 (C.D. Cal. May 2, 2017); *In re ConAgra Foods, Inc.*, 302 F.R.D. 537, 556 (C.D. Cal. 2014) ("An expert's sole or primary reliance on the opinions of other experts raises serious reliability questions."); *In re Imperial Credit Indus., Inc. Sec. Litig.*, 252 F. Supp. 2d 1005, 1012 (C.D. Cal. 2003) (The Federal Rules of Evidence "do not permit an expert to rely upon excerpts from opinions developed by another expert for the purposes of litigation."), *aff'd sub nom. Mortensen v. Snavely*, 145 F. App'x 218 (9th Cir. 2005).

Although denominated as a "replacement" expert for Dr. Li (Truman Dep. 28:8-18, 30:12-31:1), Ms. Truman is essentially being proposed to serve as a mouthpiece for his opinions. As Ms. Truman acknowledged, she simply "adopted" many of Dr. Li's opinions with only "minor changes" (Truman Gen. Rep. at 21), and she repeatedly and extensively repeated Dr. Li's expert opinions that were excluded from this case without any independent validation of Dr. Li's claims (*see, e.g.*, Truman Dep. 39:4-9). For example, Ms. Truman adopted the following core opinions from Dr. Li "verbatim": the Pinnacle implant is defectively designed because it exposes patients to a "untested trunnion" (Truman Dep. 126:11-129:6; *id.* 130:6-13); the device is defective because "DePuy was incapable of adequately warning the public of the dangers" (*id.* 130:14-131:16); and DePuy inaccurately represented the literature in its marketing (*id.* 131:17-132:2). (*See also* Truman Gen. Rep. at 27 ("I also agree with and adopt . . . Dr Stephen Li's General Findings #1-5 and his Ultimate Opinions # 1-5 . . . .").) Such blind adoption of Dr. Li's previously excluded opinions flouts the requirements of *Daubert* and Rule 702 and represents yet another transparent attempt to inject Dr. Li's expert opinions into this case. The Court should reject this gambit and exclude the defect, warning and marketing opinions of Ms. Truman that merely parrot those of Dr. Li.

1  II.    **MS. TRUMAN'S OPINIONS REGARDING MEDICAL CAUSATION ARE INADMISSIBLE FOR MULTIPLE REASONS.**

2

3  The Court should also exclude Ms. Truman's medical causation opinions for two reasons: (1) she is not qualified to offer them; and (2) they are not reliable.

4

5  A.    **Ms. Truman Is Not Qualified To Testify About The Nature Or Medical Cause Of Plaintiff's Alleged Injuries.**

6  Courts across the country have made clear that biomechanical engineers like

7  Ms. Truman are not qualified to offer medical opinions; indeed, Ms. Truman herself

8  has been ***repeatedly*** barred from testifying on this very basis. *See Soto*, 2004 WL

9  5663631, at *3 ("Plaintiff's biomechanical expert, Ms. Truman, is not a physician

10  and is not competent to offer an opinion as to causal relationship between plaintiff's

11  newly claimed neck and back complaints and the accident of April 1994.");

12  *Ferguson*, 2009 WL 3335879, at *1 (Ms. Truman was "not qualified" to testify

13  regarding oxygen deprivation or autopsy findings); *Bayes*, 2020 WL 5594059, at *6

14  ("[Ms.] Truman is an engineer, not a medical doctor" and thus, "the [c]ourt will not

15  permit [Ms.] Truman to opine on the medical causation of [plaintiff]'s injuries.");

16  *Hardison*, 2020 WL 4334108, at *12 (similar).

17  These opinions were correct because biomechanical engineers "lack the

18  medical training necessary to identify the different tolerance levels and preexisting

19  medical conditions of individuals, both of which 'could have an effect on what

20  injuries resulted.'" *Worley v. State Farm Mut. Auto. Ins. Co.*, No. 3:12-cv-1041-J-

21  MCR, 2013 WL 6478109, at *1-2 (M.D. Fla. Dec. 10, 2013) (citations omitted); *see*

22  *also, e.g.*, *Contreras v. Brown*, No. CV-17-08217-PHX-JAT, 2018 WL 7254917, at

23  *3 (D. Ariz. Dec. 4, 2018) (holding expert "would exceed the scope of his expertise

24  as a biomechanical engineer by testifying to the medical causation of [p]laintiffs'

25  specific injuries"); *Smith v. BNSF Ry. Co.*, No. CIV-08-1203-D, 2011 WL 7053631,

26  at *7 (W.D. Okla. Sept. 14, 2011) (prohibiting biomechanical engineer from

27  testifying that "[p]laintiff's musculoskeletal disorders were the result of a medical

28  condition," or opining on "other potential medical causes of his neck, back, and

shoulder injuries" because those would be "medical opinion[s] which [are] outside the scope of her expertise as a biomechanical engineer").

This case is no different. Ms. Truman acknowledged at her deposition that she is not a medical doctor (Truman Dep. 61:10-17, 166:7-9) and that she must rely on the medical practitioners for medical causation (*id.* 61:18-62:2; *see also id.* 62:17-18 (Ms. Truman testifying that she "rel[ies] on the diagnoses of the doctors"); *id.* 185:20-24 ("I can't diagnose anyways, so I've -- I've considered that, but I am relying on their diagnoses")). Nonetheless, she seeks to opine that plaintiff "suffered" "pain and function loss," which Ms. Truman attributes to "the adverse tissue reactions (metal sensitivity) to the wear debris and metal ions" from her Pinnacle MoM implant. (Truman Rep. at 20; *see also id.* at 2 ("Barbara McCoy has suffered from various diagnosed adverse local tissue reactions to the Pinnacle MoM bearing wear . . . ."); *id.* ("As a result of use of Pinnacle MoM bearings [in] her left hip in 2008, . . . Barbara McCoy's left limb has required four additional procedures to date.").) Such testimony is the very sort that courts have held exceeds the bounds of a biomechanical engineer's expertise, and this Court should exclude it as well.

### B. Ms. Truman's Opinion That Plaintiff Experienced "Sufficient" Wear To Cause Metallosis Is Not Based On A Reliable Methodology.

Ms. Truman's medical causation opinions are also inadmissible because they lack a reliable foundation.

Ms. Truman seeks to testify that the wear on plaintiff's explanted hip implant was "excessive" and "sufficient" to cause her alleged metallosis. (*See* Truman Dep. 109:4-8 (Ms. Truman opining that plaintiff "had an excessive [amount of wear] -- enough to cause or to, if not removed it was in the -- it was in the range known to stimulate immune reactions"); *see also* Truman Rep. at 9 (noting "[t]he core defect in the Pinnacle . . . product family is the . . . release of metal ions of sufficient quantity . . . to stimulate immune responses and adverse local tissue reactions").) But Ms. Truman does not: (1) identify how much wear would be needed for such an

Barnes &
Thornburg LLP
Attorneys At Law
Los Angeles

injury; and (2) show that Ms. McCoy's device experienced wear above that level. Indeed, Ms. Truman failed to conduct or rely on any volumetric wear measurements in this case. (*See, e.g.*, Truman Dep. 107:2-7; *id.* 109:11-12; *id.* 57:15-58:17; *id.* 115:5-8; *id.* 197:7-11.) Ms. Truman's failure to quantitatively measure Ms. McCoy's wear is especially problematic because she conceded that there "is no physical evidence" that Ms. McCoy's explants experienced wear at all, as Ms. Truman conceded she never examined the devices at issue. (Truman Dep. 57:15-58:17.)

Nor does Ms. Truman know what level of wear is needed for injury. (Truman Dep. 190:20-191:12 ("I don't know the number – what that number is.").) As another court explained in excluding Ms. Truman's similar opinions, she cannot "assume[] . . . the amount [of corrosion] . . . was sufficient to cause [the alleged] injuries" without explaining "how much . . . [wa]s necessary for clinically significant corrosion and adverse local tissue reaction to occur." *In re Zimmer*, 2021 WL 3475681, at *7.[3]

Because Ms. Truman's causation opinions rest on unfounded assumptions, they should be excluded for this reason as well.

### III. MS. TRUMAN'S TESTING AND WARNING OPINIONS LACK SUFFICIENT FACTUAL BASES.

Ms. Truman's opinions that DePuy failed to adequately test the Pinnacle device or to adequately warn about its risks are separately inadmissible because they

---

[3] Although the *Zimmer* court technically applied this reasoning to Ms. Truman's defect-based opinions, the principle underlying that reasoning was effectively one of dose, and thus applies with equal force to her attempt to draw a causal relationship between the purported defect and alleged injuries here. *See In re Zantac (Ranitidine) Prods. Liab. Litig.*, 644 F. Supp. 3d 1075, 1266 (S.D. Fla. 2022) (explaining that "[a] reliable general causation opinion must provide a threshold dose at which the substance becomes harmful") (citing *McClain v. Metabolife Int'l, Inc.*, 401 F.3d 1233, 1241 (11th Cir. 2005)); *accord McClain*, 401 F.3d at 1241 ("[A] plaintiff must demonstrate 'the levels of exposure that are hazardous to human beings generally as well as the plaintiff's actual level of exposure to the defendant's toxic substance before he or she may recover.'") (citations omitted).

BARNES &
THORNBURG LLP
ATTORNEYS AT LAW
LOS ANGELES

are based on "unsubstantiated speculation and subjective beliefs." *Diviero v. Uniroyal Goodrich Tire Co.*, 114 F.3d 851, 853 (9th Cir. 1997); *see also Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) (opinion cannot be based on the mere *ipse dixit* of the witness). Once again, Ms. Truman's opinions have been excluded by other courts in prior cases on this very ground. *See, e.g., Thompson*, 2013 WL 5406628, at *7 (excluding Ms. Truman's opinion because it was "not based on sufficient facts or data").

**A.** **<u>Ms. Truman's Opinion That DePuy Failed To Warn About A Known Risk Of Excessive Metal Wear Debris In 2006 Is Not Grounded In Any Methodology.</u>**

The Court should exclude Ms. Truman's opinion that DePuy knew in 2006 that the Pinnacle hip implant was failing at a higher than normal rate due to excessive metal debris because her opinion is based on failures of a different product.

Ms. Truman seeks to opine that "in advance of 2006," "DePuy knew or should have known of the increased failure risk data" "and that the reason for the uptick in revisions . . . [was] adverse reactions to . . . metal debris." (Truman Gen. Rep. at 17; *see also id.* at 170 (Ms. Truman positing that the "[i]ndustry knew, and DePuy knew or should have known of the dangers of [metal] debris and the foreseeable detrimental levels of . . . metal ions released in 1995, *in advance of development and release of" the DePuy Pinnacle devices*) (emphasis added).) In so opining, however, Ms. Truman points to evidence regarding *different products*, including a memo regarding the Hylamer polymer liner and information regarding the Ultima product with a tapered polished stem. (*See* Truman Dep. 197:22-201:13; *see also* Truman Gen. Rep. at 128 (Ms. Truman citing to "literature in 2005-2008" pertaining to the Metasul device that "described adverse reaction to [metal-on-metal] bearings"); *id.* ("DePuy was aware of adverse reactions associated with Generation II Metasul product.").) Ms. Truman also relies on information related to a completely different DePuy metal-on-metal hip system, the "ASR" (Truman Rep. at 10), which Ms. Truman similarly

1    recognized is distinct from the device implanted into Ms. McCoy (*see* Truman Dep.

2    231:18-23).  Even if DePuy had knowledge concerning the performance of these

3    other implants, such knowledge would not be a reliable basis for Ms. Truman to

4    conclude that DePuy also knew how the Pinnacle Ultamet would wear.  *See, e.g.*,

5    *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1146-47 (9th Cir. 2012) (plaintiffs'

6    allegation that the defendant "was also aware of the defect because [the defendant]

7    had 'access to the aggregate information and data regarding the risk . . .' and there

8    had been another lawsuit involving the same defect on a different model" was

9    "conclusory" and insufficient to show knowledge of the defect); *Morris v. Biomet,

10   Inc.*, 491 F. Supp. 3d 87, 109 (D. Md. 2020) (single doctor's report about possible

11   concerns with "long-term systemic effects of metal ion release from metal-on-metal

12   devices" generally and an Australian hazard alert that "metal-on-metal hip

13   replacement implants had a higher than expected revision rate" did not "clearly and

14   convincingly show that [defendant] had actual knowledge of a defect" in the device).

15   Accordingly, this testimony should be excluded.

16   **B.    Ms. Truman Has No Basis For Her Opinion That DePuy Failed To
17   Adequately Test The Pinnacle Hip Implant.**

18        Ms. Truman's opinion that DePuy should have conducted more clinical testing

19   before marketing the Pinnacle similarly fails because her testing opinion is untethered

20   to any scientific data or objective principles and would therefore be unhelpful to the

21   jury.  Notably, another court recently precluded Ms. Truman from opining that

22   another hip implant manufacturer "should have conducted additional testing"

23   because she did "not explain the costs and benefits so that the factfinder could

24   determine whether additional testing would be reasonable or unreasonable."  *In re

25   Zimmer*, 2021 WL 3475681, at *9.  As the *Zimmer* court explained, this opinion

26   "lack[ed] [any] scientific connection," and "simply asserting that Zimmer should

27   have done more testing does not help the jury determine whether Zimmer acted

28   reasonably."  *Id.*; *see also, e.g.*, *In re Ethicon, Inc., Pelvic Repair Sys. Prods. Liab.*

BARNES &
THORNBURG LLP
ATTORNEYS AT LAW
LOS ANGELES

10                                          3:22-CV-2075 JLS (SBC)

**DEFENDANTS' NOTICE OF MOTION AND MOTION TO EXCLUDE CERTAIN OPINIONS OF MARI TRUMAN;
MEMORANDUM AND POINTS OF AUTHORITIES IN SUPPORT THEREOF**

*Litig.*, No. 2:12-cv-4301, 2014 WL 186872, at *18 (S.D. W. Va. Jan. 15, 2014) (excluding expert testimony that "analyze[d] a number of risks with the [product] and then state[d] that particular tests were not conducted to investigate those risks" as "unreliable" and "merely *ipse dixit*" because the expert "point[ed] to nothing requiring such testing"); *In re Diet Drugs*, MDL No. 1203, 2001 WL 454586, at *16 (E.D. Pa. Feb. 1, 2001) (excluding expert opinion that adverse event reports "should have triggered more warnings, evaluation and testing" where expert testified that opinion was "based on his own personal opinion rather than any particular methodology").

Ms. Truman's testing opinions suffer from the same methodological infirmity. According to Ms. Truman, "[a] reasonable and responsible manufacturer would have completed long-term multi-center clinical trials to assess the biologic risks of their MoM devices" and "would have completed more thorough testing prior to release for use by orthopedic surgeons." (Truman Rep. at 12, 15.) But she provides no objective basis for these statements, and her belief alone is not a sufficient basis for an expert opinion. This is all the more true in light of Ms. Truman's prior concession in another case that the Pinnacle device underwent "the standard ASTM" corrosion testing prior to its launch (Dep. of Mari Truman ("Truman *Baldwin* Dep.") 212:4-18, *Baldwin v. DePuy Orthopaedics, Inc.*, No. 3:12-cv-00731-K (N.D. Tex. Nov. 16, 2022) (Ex. 5)) and that "the FDA did allow clearance [of the Pinnacle] through the 510(k) process" (*id.* 211:1-12). Accordingly, Ms. Truman's opinion that DePuy should have conducted clinical trials for a longer period of time is inadmissible *ipse dixit* that would be unhelpful to the jury, rendering it inadmissible under Rule 702.

## IV.  MS. TRUMAN'S WARNING CAUSATION OPINIONS SHOULD BE EXCLUDED.

The Court should also exclude Ms. Truman's opinions that "DePuy's promotion of the Pinnacle MoM bearing benefits without full disclosure of risks led surgeons to select this MoM procedure" and that "[a] sufficient warning would have

allowed surgeons and patients to avoid the dangers of" the Pinnace device "by choosing a safer alternative bearing." (Truman Rep. at 14.)  Ms. Truman is not qualified to offer this opinion, and it is not based on a reliable methodology.

**First**, a biomechanical engineer is not qualified to testify about how different warnings would have affected the choices made by orthopedic surgeons. *See, e.g.*, *Georges v. Novartis Pharms. Corp.*, No. CV 06-5207 SJO (VBKx), 2012 WL 9064768, at *12 (C.D. Cal. Nov. 2, 2012) (FDA regulatory expert lacked "the expertise to testify how treating physicians might react to different labeling"); *Tillman v. C.R. Bard, Inc.*, 96 F. Supp. 3d 1307, 1329 (M.D. Fla. 2015) (finding engineer's "lack of medical training or expertise in the relevant medical specialty render[ed] him further unqualified to offer an opinion on the adequacy or appropriateness of . . . [device's] warning label"); *King v. Synthes (U.S.A.)*, 532 F. Supp. 2d 828, 833 (S.D. Miss. 2006) (excluding labeling opinion of medical technology expert because the expert had no medical training, had never drafted a label for the device, did not design an alternative label, or review the label of competitor devices); *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 556-57 (S.D.N.Y. 2004) (clinical studies expert was not qualified to testify as to whether he believed physicians would have prescribed Rezulin if they were given more information regarding the drug's risks).  Ms. Truman likewise has no experience deciding what implant to use on a patient, much less evaluating how IFU warnings bear on that quintessentially medicine-based decision-making process.  For this reason alone, her warning causation opinion should be excluded.

**Second**, Ms. Truman does not have a reliable basis for her warning causation opinion because she never spoke to plaintiff's surgeon, Dr. William Bugbee, or any of plaintiff's other physicians. (Truman Dep. 182:16-22.)  And although Ms. Truman assumes that Dr. Bugbee "was aware of" DePuy's "promotional material" and "brochures" (*id.* 147:10-18), Dr. Bugbee actually testified that he had no recollection of seeing any particular piece of DePuy promotional material (Dep. of William

Bugbee, MD 95:22-96:3, Jan. 17, 2023 (Ex. 6)).   In any event, any purported exposure to DePuy's marketing is beside the point because, as even Ms. Truman acknowledged, Dr. Bugbee testified that he did ***not*** rely on DePuy's marketing when choosing the Pinnacle device for Ms. McCoy.  (Truman Dep. 147:6-10; *id.* 147:12-14.)  For these reasons, Ms. Truman's opinions regarding what materials Dr. Bugbee saw or what he would have done with different information is nothing more than ***pure speculation*** and contrary to Dr. Bugbee's own testimony.

## V.   MS. TRUMAN'S TRAINING OPINION SHOULD BE EXCLUDED.

The Court should also exclude Ms. Truman's opinion that certain risks of metal-on-metal devices were "not sufficiently highlighted by DePuy in its . . . training materials, especially prior to 2008."  (*See, e.g.*, Truman Gen. Rep. at 17; Truman Rep. at 21.)  As previously discussed, Ms. Truman—who is not a medical doctor—has no relevant expertise as to the medicine-based considerations that inform an orthopedic surgeon's clinical judgment.  It follows perforce that Ms. Truman is even more ill-equipped to opine on how such doctors should be trained in carrying out this function.  *See, e.g.*, *Heinrich v. Ethicon, Inc.*, No. 2:20-cv-00166-APG-VCF, 2021 WL 2285435, at *5 (D. Nev. June 4, 2021) (excluding expert opinion regarding physician training because plaintiff "has not pointed to evidence that [the expert] is qualified to opine on what training a medical device manufacturer should provide to physicians"); *Mason v. Ethicon, Inc.*, No. 6:20-cv-1078-RBD-DCI, 2021 WL 2580165, at *5 (M.D. Fla. June 9, 2021) (precluding medical doctor from testifying "on the duties of a medical device manufacturer—specifically, testing, physician training, and adverse event reporting" given that he lacked "specialized knowledge to opine as an expert on what [d]efendants should have done").

Even assuming Ms. Truman were sufficiently qualified on this subject, she has no basis to opine on any training materials because she has not even seen them, let alone seriously considered how they were supposedly inadequate.  (*See, e.g.*, Truman

BARNES &
THORNBURG LLP
ATTORNEYS AT LAW
LOS ANGELES

Dep. 206:22-207:4; Truman *Baldwin* Dep. 125:8-13.)  Accordingly, this opinion is pure *ipse dixit* and should be excluded for this reason as well.  *See Joiner*, 522 U.S. at 146.

## VI.   MS. TRUMAN'S OPINION THAT THE PINNACLE DEVICE WAS DEFECTIVE IS UNRELIABLE AND IRRELEVANT.

Ms. Truman's defect theory is separately unreliable because it does not factor in the benefits of the Pinnacle device's design as compared to the other available products on the market during the relevant time periods.  *See, e.g.*, *Ho v. Michelin N. Am., Inc.*, 520 F. App'x 658, 665 (10th Cir. 2013) (affirming exclusion of expert "opinion [that] did not 'rest on any attempt to rationally balance' the advantages and disadvantages of" the product's design); *Tillman*, 96 F. Supp. 3d at 1330 (excluding expert opinion that failed to assess, *inter alia*, "the risks versus the benefits of the filter").  This repeats an error Ms. Truman made in prior cases.  For example, in *Thompson v. Zimmer Inc.*, the court held that Ms. Truman's design defect opinion was "not supported by sufficient facts or data" because she "did not do any analysis of the possible tradeoffs of a different design," despite providing data indicating that the design attributes that allegedly made the hip implant liner prone to fracture also greatly reduced the risk of dislocation.  2013 WL 5406628, at *6; *see also In re Zimmer*, 2021 WL 3475681, at *10 (excluding Ms. Truman's proposed alternative design opinion because "[Ms.] Truman considered only one risk—the risk of corrosion—without weighing other risks that her proposed alternatives could introduce or exacerbate (such as the risk of fracture, which, with a ceramic head, can produce ceramic shards that harm the patient)").

So too here.  Ms. Truman repeatedly admitted that during the relevant time periods, there were known risks for the other available hip implant options.  For example, she testified that in the early 2000s, the orthopedic community knew about the incidence of osteolysis or bone resorption with polyethylene products, and that there were known risks, including wear debris, osteolysis and fracture, from

BARNES &
THORNBURG LLP
ATTORNEYS AT LAW
LOS ANGELES

14

3:22-CV-2075 JLS (SBC)

**DEFENDANTS' NOTICE OF MOTION AND MOTION TO EXCLUDE CERTAIN OPINIONS OF MARI TRUMAN;
MEMORANDUM AND POINTS OF AUTHORITIES IN SUPPORT THEREOF**

1     polyethylene. (*See, e.g.*, Truman Dep. 70:1-71:19, 203:2-204:13, 193:4-18.) In

2     addition, Ms. Truman admitted that all metal implants will corrode in the human

3     body, including with a metal-on-poly construct. (*Id.* 205:24-206:20.)

4     Notwithstanding this testimony, Ms. Truman ignores the advantages of the

5     purportedly defective metal-on-metal design (e.g., reduced fracture and osteolysis).

6     Nor does she weigh those benefits against the relative risks of the purportedly

7     defective metal-on-metal design. Accordingly, as in *Thompson*, Ms. Truman has not

8     undertaken a reliable risk-utility analysis, which is a separate ground for excluding

9     her design defect opinions. 2013 WL 5406628, at \*6.

## VII.    MS. TRUMAN'S OPINIONS REGARDING DEPUY'S STATE OF MIND SHOULD BE EXCLUDED.

12     Finally, the Court should exclude those portions of Ms. Truman's report that

13     attempt to opine on DePuy's state of mind and knowledge. As courts have repeatedly

14     held, "[e]xpert testimony as to intent, motive, or state of mind offers no more than

15     the drawing of an inference from the facts of the case . . . and permitting expert

16     testimony on this subject would be merely substituting the expert's judgment for the

17     jury's and would not be helpful to the jury." *Siring v. Or. State Bd. of Higher Educ.*

18     *ex rel. E. Or. Univ.*, 927 F. Supp. 2d 1069, 1077 (D. Or. 2013); *see also Pelican Int'l,*

19     *Inc. v. Hobie Cat Co.*, No. 3:20-cv-02390-RSH-MSB, 2023 WL 2130379, at \*10-11

20     (S.D. Cal. Feb. 10, 2023*)* (precluding expert's opinions as to "intent, motive, or state

21     of mind" because "technical experts generally may not testify about 'motives, intent,

22     or state of mind,' as determinations on those issues are reserved for the jury")

23     (citation omitted); *Aya Healthcare Servs., Inc. v. AMN Healthcare, Inc.*, 613 F. Supp.

24     3d 1308, 1322 (S.D. Cal. 2020) (expert's state of mind conclusions were inadmissible

25     because such "testimony intrudes on the province of the jury, who is capable of

26     evaluating the same evidence and drawing conclusions without [the expert's]

27     proffered testimony"), *aff'd*, 9 F.4th 1102 (9th Cir. 2021).

BARNES &
THORNBURG LLP
ATTORNEYS AT LAW
LOS ANGELES

15     3:22-CV-2075 JLS (SBC)

DEFENDANTS' NOTICE OF MOTION AND MOTION TO EXCLUDE CERTAIN OPINIONS OF MARI TRUMAN;
MEMORANDUM AND POINTS OF AUTHORITIES IN SUPPORT THEREOF

1    Ms. Truman's report and deposition testimony are replete with statements
2    concerning what DePuy supposedly knew and when it purportedly knew it.  For
3    example, Ms. Truman claims that "DePuy knew" that "the articulating surface and
4    the femoral taper junction were designed to produce a number of metal particles . . .
5    [and] would create adverse reactions in a high percentage of patients" and that it
6    knew "of the dangers of [metal] debris" generally.  (Truman Gen. Rep. at 13, 170;
7    *see also id.* at 17 ("DePuy knew or should have known of the increased failure risk
8    data of its Pinnacle [devices] in advance of 2006 . . . ."); Truman Dep. 197:22-198:5
9    (Ms. Truman stating she "believe[s] that [DePuy] knew that there were increased
10   risks and dangers from the very outset of starting the projects").)  She also seeks to
11   testify about DePuy's motives and intent, including its alleged effort to "downplay[]
12   the significance of histological reactions." (Truman Gen. Rep. at 9; *id.* at 10 ("DePuy
13   downplayed the significance of [adverse reactions], and claimed 'rarity' . . . .").)
14   These opinions should be "excluded as unhelpful in that a jury is fully capable of
15   drawing its own inferences" regarding intent and state of mind. *Tillman*, 96 F. Supp.
16   3d at 1327.

## **CONCLUSION**

18   For the reasons set forth above, the Court should grant defendants' motion to
19   exclude the testimony of Mari Truman.
20   / / /
21   / / /
22   / / /
23   / / /
24   / / /
25   / / /
26   / / /
27   / / /
28   / / /

BARNES & THORNBURG LLP
ATTORNEYS AT LAW
LOS ANGELES

DEFENDANTS' NOTICE OF MOTION AND MOTION TO EXCLUDE CERTAIN OPINIONS OF MARI TRUMAN; MEMORANDUM AND POINTS OF AUTHORITIES IN SUPPORT THEREOF

Dated:  December 15, 2023                   Respectfully submitted,

                                            **BARNES & THORNBURG LLP**


                                            By: */s/ Kelley S. Olah*
                                                 Kelley S. Olah
                                                 Andrew J. Galvin

                                            **SKADDEN      ARPS       SLATE
                                            MEAGHER & FROM LLP**

                                            By: */s/ Jessica Davidson*
                                                 Jessica Davidson
                                                 Allison Brown

                                            Attorneys for Defendants
                                            DePuy Orthopaedics, Inc., DePuy
                                            Products, Inc., DePuy Synthes,
                                            Inc., Johnson & Johnson, Johnson
                                            & Johnson Services, Inc., and
                                            Johnson & Johnson International